COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO.
2-08-430-CR

 

 

JAMES THOMAS
KAVANAGH                                               APPELLANT

 

                                                   V.

 

THE STATE OF
TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL DISTRICT COURT NO. 2 OF
TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

                                                    

                                              ------------

I. Introduction








Appellant James
Thomas Kavanagh appeals his conviction for aggravated assault.  In his sole issue, Kavanagh argues that the
evidence admitted at trial was factually insufficient to sustain his
conviction.  Specifically, he argues that
the accomplice-witness testimony was insufficiently corroborated and that,
excluding that testimony, the evidence was factually insufficient.   We will affirm.

II.  Factual and Procedural Background

On March 27, 2007,
Ramiro AJunior@ Perez was robbed
and seriously beaten.  He remembered
being at a house on South Adams Street, where Annabelle Nieto and Elizabeth
Dawn Howard lived, to help Jennifer Smith move. He remembered getting hit in
the head, awakening badly hurt in his van, and walking to his son=s nearby
house.  His wallet, watch, and money had
been stolen.  The attack left Perez with
substantial injuries, including permanent blindness in his right eye, punctured
lungs, and a lacerated liver.  He
required a titanium plate in his head and eight screws in his jaw.  Perez was hospitalized for a month and, as of
the time of Kavanagh=s trial, had not been able to work since
the attack.   

Police interviewed
Smith in connection with the assault and learned of Kavanagh=s
involvement.  Police then interviewed
Kavanagh, who ultimately admitted to hitting Perez Aonce or twice,@ loading him in
his van, and driving him a few blocks away. 
Kavanagh was charged with two counts of aggravated robbery with a deadly
weapon and one count of aggravated assault. 









At Kavanagh=s trial, Howard
testified about how she, Kavanagh, Nieto, and Smith planned to rob Perez and
about the details of the crime. Howard received a reduced sentence in exchange
for her testimony.  The State also introduced
testimony from two Fort Worth police officers who investigated the case, from
Perez, and from Nieto=s daughter Caress Lozano, and the State
introduced an audio-taped interview between Kavanagh and Detective Dana Baggott.  

The jury convicted
Kavanagh of aggravated assault and assessed his punishment at six years= confinement.  The trial court sentenced him accordingly. 

                     III. Factual Sufficiency Standard of Review








When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party. Steadman v. State, 280 S.W.3d 242, 246 (Tex.
Crim. App. 2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App.
2006).  We then ask whether the evidence
supporting the conviction, although legally sufficient, is nevertheless so weak
that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s
determination is manifestly unjust.  Steadman, 280 S.W.3d at 246; Watson,
204 S.W.3d at 414B15,
417.  To reverse under the second ground,
we must determine, with some objective basis in the record, that the great
weight and preponderance of all the evidence, although legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.  

Unless we conclude that it is necessary to
correct manifest injustice, we must give due deference to the factfinder=s determinations, Aparticularly those determinations concerning the
weight and credibility of the evidence.@  Johnson
v. State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); see Steadman, 280
S.W.3d at 246.  Evidence is always
factually sufficient when it preponderates in favor of the conviction.  Steadman, 280 S.W.3d at 247; see
Watson, 204 S.W.3d at 417.  








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to
overturn [the] conviction.@  Watson,
204 S.W.3d at 417.   We cannot conclude
that a conviction is clearly wrong or manifestly unjust simply because we would
have decided differently than the jury or because we disagree with the jury=s resolution of a conflict in the evidence.  Id. 
We may not simply substitute our judgment for the factfinder=s.  Johnson,
23 S.W.3d at 12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App.
1997).  Unless the record clearly reveals
that a different result is appropriate, we must defer to the jury=s determination of the weight to be given
contradictory testimonial evidence because resolution of the conflict Aoften turns on an evaluation of credibility and
demeanor, and those jurors were in attendance when the testimony was delivered.@  Johnson,
23 S.W.3d at 8.  Our deference in this
regard safeguards the defendant=s right to a trial by jury.  Lancon v. State, 253 S.W.3d 699, 704
(Tex. Crim. App. 2008).  An opinion
addressing factual sufficiency must include a discussion of the most important
and relevant evidence that supports the appellant=s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003). 

The standards discussed above do not apply when
conducting a review of whether evidence sufficiently corroborates accomplice
testimony.  Malone v. State, 253
S.W.3d 253, 257 (Tex. Crim. App. 2008); see Tex. Code Crim. Proc. Ann.
art. 38.14 (Vernon 2005).

IV. Factual Sufficiency








In his sole issue,
Kavanagh argues that the evidence, when taken as a whole, is factually
insufficient to identify him as the perpetrator of the crime because the
testimony of the witnesses against him was contradictory, inconsistent, and
biased.  Kavanagh then argues that the
evidence consisted primarily of Howard=s accomplice
testimony, that her testimony was insufficiently corroborated, and that,
consequently, the evidence is insufficient to support his conviction.[2]


A. Accomplice
Testimony

Howard, Smith, and
Nieto lived together in a one-bedroom duplex, along with Nieto=s teenage daughter
Lozano and several other transients.  Howard testified that Kavanagh had begun staying
at the duplex two days before they robbed Perez and that Kavanagh had a sexual
relationship with Smith.  

Howard testified
that on March 25, 2007, she, Kavanagh, Nieto, and Smith drew up a plan to rob
Perez.  They knew that Perez, who was
sixty-nine years old, was a drug dealer and, as such, regularly carried
significant quantities of drugs.  Howard
testified that Smith regularly exchanged sex for drugs from Perez.  Howard intended to use the cash they planned
to steal from Perez to pay the rent, and Kavanagh planned to sell whatever
drugs they found on Perez and in his van. 








Howard testified
that on the morning after they had devised their plan to rob Perez, she was
awakened by Kavanagh shouting that Ahe was tired of
this sh*t going on with that n*gga.@  She got up and saw Perez=s van parked in
front of the duplex and saw Perez helping Smith load her belongings into the
van. Howard and Kavanagh walked outside and approached Perez.  Kavanagh punched Perez one time in the face,
breaking his glasses and knocking him to the ground.  

Howard testified
that Kavanagh rolled Perez over, took his wallet, and threw it at her.  Howard then ran back inside because she saw
the headlights of an approaching car. 
She gave Nieto the wallet while Smith brought in other things that she
had removed from Perez=s van, including drugs, another wallet, a
watch, a pocket knife, and a chain. 
Howard testified that they had found $450 in the two wallets.   

Howard explained
that when she went outside to throw the unwanted items they had stolen into the
trash can, she had noticed that Kavanagh, Perez, and Perez=s van were
gone.  Approximately fifteen minutes
later, Kavanagh walked back into the duplex alone, his hands sheathed in bloody
socks.  Kavanagh said, AI just f*cked that
n*gga up.  I did that.@  Kavanagh also told Howard that he had wrecked
Perez=s van.  Kavanagh bragged to a pair of temporary Aguests@ named Pancho and
Elizonda, who laughed and responded, A[T]hat=s my boy.@     








Howard stated that
a few hours after the assault and robbery of Perez, she and Nieto had driven to
the property management office and had paid both the arrearage on their rent
and the amount due for the current and following weeks. They then went to a
park and got high on the methamphetamine stolen from Perez=s van.  

B.  The Law Governing
Accomplice-Witness Testimony

Article 38.14 of the code of criminal procedure
provides that A[a]
conviction cannot be had upon the testimony of an accomplice unless
corroborated by other evidence tending to connect the defendant with the offense
committed; and the corroboration is not sufficient if it merely shows the
commission of the offense.@  Tex. Code
Crim. Proc. Ann. art. 38.14.  








When evaluating the sufficiency of corroboration
evidence under the accomplice-witness rule, we Aeliminate the accomplice testimony from
consideration and then examine the remaining portions of the record to see if
there is any evidence that tends to connect the accused with the commission of
the crime.@  Malone, 253 S.W.3d at 257 (quoting Solomon
v. State, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001)).  To meet the requirements of the rule, the
corroborating evidence need not prove the defendant=s guilt beyond a reasonable doubt by itself.  Id.; Trevino v. State, 991 S.W.2d
849, 851 (Tex. Crim. App. 1999); Gill v. State, 873 S.W.2d 45, 48 (Tex.
Crim. App. 1994). Nor is it necessary for the corroborating evidence to
directly link the accused to the commission of the offense.  Cathey v. State, 992 S.W.2d 460, 462
(Tex. Crim. App. 1999), cert. denied, 528 U.S. 1082 (2000).  Rather, the evidence must simply link the
accused in some way to the commission of the crime and show that Arational jurors could conclude that this evidence
sufficiently tended to connect [the accused] to the offense.@  Simmons
v. State, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009).  

There is no set amount of non-accomplice
corroboration evidence that is required for sufficiency purposes; A[e]ach case must be judged on its own facts.@  Malone,
253 S.W.3d at 257 (quoting Gill, 873 S.W.2d at 48). Circumstances that
are apparently insignificant may constitute sufficient evidence of
corroboration.  Trevino, 991
S.W.2d at 852. 

Additionally, A[p]roof that the accused was at or near the scene
of the crime at or about the time of its commission, when coupled with other
suspicious circumstances, may tend to connect the accused to the crime so as to
furnish sufficient corroboration to support a conviction.@  Malone,
253 S.W.3d at 257 (quoting Brown v. State, 672 S.W.2d 487, 489 (Tex.
Crim. App. 1984)).  But Amere presence alone of a defendant at the scene
of a crime is insufficient to corroborate accomplice testimony.@  Id. (quoting
Golden v. State, 851 S.W.2d 291, 294 (Tex. Crim. App. 1993)).    








The accomplice-witness rule is a statutorily
imposed sufficiency review and is not derived from federal or state
constitutional principles that define the legal and factual sufficiency
standards.  Cathey, 992 S.W.2d at
462B63.

C. Other Evidence Tends to Connect: The
Non-Accomplice Testimony

During Detective Baggott=s interview of Kavanagh after the assault,
Kavanagh initially denied his involvement entirely, but he later admitted that
he hit Perez.  During the recorded
interview, Kavanagh described hitting Perez once or twice and knocking him
down; Kavanagh said that Perez was Areal bloody.@ Kavanagh explained in the interview that he had
covered his hands with socks to keep his knuckles from getting Abruised.@  He told
Detective Baggott that Perez was a Amanipulator@ who deserved to be beaten and that he definitely
wanted to beat up Perez.  Kavanagh said
that he and Howard had loaded Perez into the back of Perez=s van, which Kavanagh then drove a few blocks
away. He said that he left the van on the street and walked back to the
duplex.   








 Lozano
testified that on the morning of the assault, she was asleep in the living room
in the front of the house, where Kavanagh and Smith were also sleeping.  She awoke to the sound of Smith crying and
saw Kavanagh, Smith, and Howard walking outside of the duplex.  Lozano went back to sleep but woke up again
to see Smith bringing items into the house. 
She saw Kavanagh return to the duplex later with Amessed up,@ Acut up and bloody@ and heard Kavanagh say that he had Ahit that guy@ and had Af*cked that N*gga up.@  She said
Kavanagh was carrying bloody socks that he was using to Aclean[] his knuckles or something.@    

Perez testified at
trial that prior to the assault and in addition to his job at a manufacturing
plant, he had sold drugs to support his own drug habit.  He
referred to Smith as his Agirlfriend@ and testified to giving her drugs in exchange
for sex.  Perez testified that, although
his memory of the assault was unclear as to precisely when and where he was
hit, he knew that when he awoke he was in his van and was injured.  He stated that he clearly remembered that he
was attacked at the duplex after Smith had called him to come help her move.

We consider the above non-accomplice testimony
discretely, having eliminated from consideration the testimony provided by
Kavanagh=s accomplice, Howard.  See Malone, 253 S.W.3d at 257.  What remains includes Kavanagh=s own admission to police that he had hit Perez
once or twice, had participated in the robbery, and had driven Perez in his van
to another location. What also remains is testimony that Kavanagh was in the
presence of his co-conspirators in the moments before and after the commission
of the crime, was present at the scene of the crime, exhibited bloody socks on his
hands thereafter, and boasted about having assaulted Perez.








Kavanagh=s admission tends
to connect him to the crime and, taken alone, tends to connect him sufficiently
to the offense and corroborates Howard=s testimony.  See Simmons, 282 S.W.3d at 508;  Joubert v. State, 235 S.W.3d 729, 731
(Tex. Crim. App. 2007), cert. denied, 128 S. Ct. 1446 (2008); see
also Farris v. State, 819 S.W.2d 490, 495 (Tex. Crim. App. 1990)
(holding appellant=s
statement to police that he shot the victims was sufficient corroboration
tending to connect him to the offense), cert. denied, 503 U.S. 911
(1992), overruled on other grounds by Riley v. State, 889 S.W.2d 290,
296 (Tex. Crim. App. 1993); Jackson v. State, 516 S.W.2d 167, 171 (Tex.
Crim. App. 1974) (holding that a defendant=s confession or
admission is sufficient to corroborate accomplice testimony in most
circumstances). Kavanagh does not deny on appeal that he assaulted Perez, but
he argues that someone else inflicted the serious injuries Perez suffered.
However, Kavanagh=s recorded admission need not establish
the exact nature of his participation in the crime to Atend to connect@ him to the
offense.  See Joubert, 235 S.W.3d
at 731 (AThe appellant=s [videotaped]
admission that he participated in the crime, although he denied being a
shooter, is enough to tend to connect him to the offense.@). 








Moreover, Lozano=s testimony that Kavanagh was in and out of the
duplex with Howard and Smith at the time of the attack on Perez, and her
statements regarding Kavanagh=s later return, when he was boasting and wielding
visibly bloody socks about his hands, also tends to connect Kavanagh to the
crime so as to furnish sufficient corroboration of Howard=s testimony.  
See Malone, 253 S.W.3d at 257; Trevino, 991 S.W.2d at 852.

In light of Kavanagh=s own recorded admission, as well as the
deference we give the jury in the weight it assigned to Lozano=s testimony and that of the other witnesses, we
hold that there is Asome
evidence tending to connect [Kavanagh] to the offense.@  Trevino,
991 S.W.2d at 852. Consequently, we hold that Howard=s testimony was sufficiently corroborated and was
properly considered by the jury under the requirements of article 38.14.  See Tex. Code Crim. Proc. Ann. art.
38.14.

                                    D.  Factually Sufficient Evidence

Kavanagh also argues
that the evidence, taken as a whole and inclusive of Howard=s accomplice
testimony, is factually insufficient to identify him as the perpetrator of the
crime because the witnesses= testimony was
contradictory, inconsistent, and biased. 
Having determined that Howard=s
accomplice-witness testimony was properly corroborated, we now analyze all the
evidenceCincluding Howard=s testimonyCin a neutral light
to determine if factually sufficient evidence exists that Kavanagh was the
perpetrator.  See Steadman, 280 S.W.3d
at 246.








Kavanagh first asserts that Howard=s testimony was inconsistent with her prior
statements to the police, Perez=s testimony, and other evidence at trial. But even assuming
that such inconsistencies exist, the jury was free to believe some or all of
the testimony it heard.  See Lancon,
253 S.W.3d at 706; see also Fuentes v. State, 991 S.W.2d 267, 271B72 (Tex. Crim.
App.), cert. denied, 528 U.S. 1026 (1999) (noting that Ato avoid intruding
on the jury=s role as arbiter of the weight and
credibility of the evidence, a factual sufficiency review remains deferential
to the jury=s verdict@).  It was within the purview of the jury to
determine the credibility of Howard=s testimony, and
as the sole judge of the witnesses= credibility, the
jury could choose to believe some testimony and disbelieve any or all of the
rest. See Lancon, 253 S.W.3d at 704. 









Kavanagh next
argues that Howard was biased in favor of the State because she testified in
exchange for a plea bargain that resulted in a substantially-reduced sentence
for her part in the crime.  However,
Kavanagh cross-examined Howard on her reduced sentence, and the jury charge
instructed the jury that Howard was an accomplice as a matter of law and that
it must believe Howard=s testimony to be true before using it as
a basis to convict.  Howard=s credibility was
an issue for the jury to decide.  See
id.  The jury evidently found her a
credible witness, and we must defer to its judgment. See Johnson,
23 S.W.3d at 8 (stating that resolution of 
bias or conflict Aoften turns on an evaluation of
credibility and demeanor, and those jurors were in attendance when the
testimony was delivered@).

Kavanagh also
argues that, while he did assault Perez, Perez could have otherwise been more
seriously injured by other people at the duplex who may have had motive to do
so, or by Aintervening factors like driving off in a
stupor and wrecking the van.@  But contrary to Kavanagh=s assertions, the
evidence demonstrates that the van was not wrecked, and there was only a small
amount of blood in the driver=s seat.  Moreover, no significant evidence suggests
another party assaulted Perez.  Kavanagh=s admissions
related to assaulting Perez, loading his unconscious body into the van, and
driving it away are extrajudicial confessions sufficient by themselves to
establish his identity as the perpetrator of the crime.  See Emery v. State, 881 S.W.2d
702, 706 (Tex. Crim. App. 1994) (holding a defendant=s extrajudicial
confession sufficient to establish his identity where three such confessions in
evidence gave certain details of the offense), cert. denied, 513 U.S.
1192 (1995).  By his own admissions, and
through Howard=s corroborated testimony of her personal
observations, Kavanagh=s identity as the individual who assaulted
Perez was sufficiently proven.








We have reviewed
the evidence in a neutral light, and we find no objective basis in the record
for holding that the jury=s verdict was clearly wrong or manifestly
unjust or that it was contradicted by the great weight and preponderance of the
evidence.  See Lancon, 253 S.W.3d
at 704; Watson, 204 S.W.3d at 414B15, 417.  Rather, the evidence presented at trial was
sufficient to support the verdict, and no contrary evidence exists that would
render the evidence factually insufficient under the applicable standard of
review.  See Lancon, 253 S.W.3d at
704; Watson, 204 S.W.3d at 414B15, 417.
Accordingly, we hold that the evidence is factually sufficient to support
Kavanagh=s conviction.  We overrule Kavanagh=s sole issue.

V. Conclusion

Having overruled
Kavanagh=s sole issue, we
affirm the trial court=s judgment.

 

 

SUE WALKER

JUSTICE

 

PANEL:
WALKER, MCCOY, and MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
April 1, 2010











[1]See Tex. R. App. P. 47.4.





[2]The trial court found Howard to be
an accomplice as a matter of law and instructed the jury accordingly.  See, e.g., Herron v. State, 86
S.W.3d 621, 631 (Tex. Crim. App. 2002).