

# NUMBER 13-11-00582-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**ERWIN BURLEY,**                                                        **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                **Appellee.**

---

### On appeal from the 105th District Court
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Justice Rose Vela**

A jury convicted appellant, Erwin Burley, of possession of one gram or more, but less than four grams of cocaine in a drug-free zone, a third-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.115(a), (c); 481.102(3)(D) (West 2010); § 481.134(c) (West Supp. 2012). After finding appellant had one previous felony conviction, the jury assessed punishment at fourteen years' imprisonment. By two issues, appellant

asserts: (1) the evidence is legally and factually insufficient to sustain his conviction; and (2) the evidence is legally and factually insufficient to sustain the jury's finding that he committed the offense in a drug-free zone. We affirm.

## I. BACKGROUND

### A. State's Evidence

In August 2010, Albert Leal, a narcotics investigator for the Corpus Christi Police Department, received a complaint about possible drug activity in a duplex, which had two apartments. The apartment under suspicion was at 1430 16th Street. A confidential informant, whom police had previously searched and determined was not possessing drugs, was sent to the apartment and returned with narcotics. Afterwards, Investigator Leal obtained a search warrant, and he and other officers went to the apartment. Upon hearing a knock, Jacob Cibrian opened the door, and the officers entered the apartment. Investigator Leal saw appellant and an Hispanic male in the living room. During the search, police found "a baggy containing crack cocaine and marijuana that was found on the floor." Investigator Leal testified he found approximately $300 in Cibrian's possession. When the prosecutor asked Investigator Leal, "Do you frequently find large amounts of cash in crack houses on the people that are selling?", he said, "I wouldn't consider $300 large, but that's common for a drug house like that." When asked what was seized during the execution of the search warrant, he said, "We seized the surveillance cameras, the drugs and the cash that Cibrian had on his person."

Amy Arellano, a forensic scientist for the Texas Department of Public Safety, tested the drugs seized at the apartment. She testified the test showed "2.05 grams

2

containing cocaine."

Cibrian[1] testified he met appellant at a convenience store in Corpus Christi about six or seven months before the police searched the apartment. When the prosecutor asked Cibrian, "How did you and [appellant] come to be involved in drug sales at 1430 16th Street?", he said:

> We had, . . . met up at the store one time, and that's when I ran into him, when I met him. And he knew a couple of customers and I knew a couple of customers, and, . . . we both came to an agreement to open up, which is called a "dope house", to sell crack cocaine to people.
>
>     *  *  *
>
> There were four duplexes and that was for rent, and we just called up the "for rent" number on there and that's when we went ahead and . . . contacted the landlord and we went ahead and rented it.

Because appellant did not have identification, he could not rent the apartment without Cibrian's help. Cibrian provided his ID to the landlord in order for appellant and him to rent the apartment. They paid the rent using the money they made from selling crack cocaine. With respect to profit sharing, Cibrian testified that appellant:

> would get a good size amount of dope and cut in between and just divide it, which is, like, half for him and half for me. And then, I'd work one night or I'd work two nights, and then he would work a night or two nights. And we would—like when we make all the money together, then we'll put it together and we'd just split the profit.

Cibrian stated their drug-selling business was "pretty much continuously operating from the time" he "took out the lease until the police stopped it[.]" He and appellant packaged the cocaine and sold it in "$10" amounts. They bought a surveillance camera from one of appellant's friends and mounted it in the corner of the duplex, facing the

---

[1] With respect to Cibrian's involvement in this case, he had earlier pleaded guilty, without a plea agreement, and was placed on community supervision.

3

street.   Cibrian testified that on the day the police searched the apartment, he arrived there earlier and saw the baggy of cocaine, which the police found on the floor, "[i]n the middle of the table . . . ."   Before the police arrived, appellant sold some of the cocaine to customers.   When Cibrian went to open the door for the police, appellant "stashed it [the baggy of cocaine] in the couch."   When the police came in, appellant was by the couch.

Cibrian testified he was "sentenced" for possession of marihuana on two occasions; January 23, 2009 and August 25, 2010.   He also had a conviction for assault causing bodily injury to his common-law wife.

**B. Defense Evidence**

Pastor Willie Simpson, who knew appellant for a couple of years, testified appellant did mainly "odd jobs" such as working with windows and scrap metal.   He stated appellant lived on "10th Avenue in some apartments."

Nicholas Montalvo, a real-estate owner, owned some fourplexes on 10th Street in Corpus Christi.   When defense counsel asked him if appellant "live[d] there?", he said appellant "was there with different people, at times[,]" but "[h]e was not on a lease."

Joyce Madden, the owner of the duplex where Cibrian and appellant were arrested, testified Cibrian and his wife, Amber, rented the apartment at 1430 16th Street.   They were "on the lease," and Cibrian, who lived there approximately two years, paid the rent on a regular monthly basis.   She never collected rent from appellant.   However, she saw appellant there "quite frequently" and found his billfold, with his driver's license inside, in the living room of the apartment, underneath the carpet.

Appellant testified he worked as a "window cleaner" and never lived in the

4

apartment at 1430 16th Street. On June 7, 2010, he was in Dallas, Texas. At some point, he returned to Corpus Christi. Appellant explained that on the day the police searched the apartment, he was there, cleaning the yard. When he finished, he went into the apartment to get paid for his work. He was inside the apartment "just momentarily" when Investigator Leal came into the apartment with the search warrant. Appellant testified he did not use drugs, did not buy or sell "crack," and did not "know anything about a drug house."

When the prosecutor asked him, "[A]re you the same Erwin Phillip Burley that was convicted of a robbery in Georgia back in July of 1978, . . . ?", he said, "That's me. . . ." He also admitted he had a 2004 conviction in Dallas County for robbery and a 2001 conviction in Dallas County for burglary of a vehicle.

Dino Maysonet, a deputy at the McKenzie Annex Facility, testified that "the only thing I could say about Mr. Burley is, . . . his good conduct while he's been incarcerated." He stated that "at all times" appellant obeyed the rules and regulations.

## II. DISCUSSION

### A. Sufficiency of the Evidence

In issue one, appellant contends the evidence is legally and factually[2] insufficient to sustain his conviction.

#### 1. Standard of Review

"When reviewing a case for legal sufficiency, we view all of the evidence in the light

---

[2] The court of criminal appeals has abolished factual-sufficiency review. *See Howard v. State*, 333 S.W.3d 137, 138 n.2 (Tex. Crim. App. 2011). Thus, with respect to both of appellant's issues, we will only address his legal-sufficiency challenges.

most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Winfrey v. State*, 323 S.W.3d 875, 878–79 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Consequently, we 'determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Id.* at 879 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). "It has been said, quite appropriately, that '[t]he appellate scales are supposed to be weighted in favor of upholding a trial court's judgment of conviction, and this weighting includes, for example, the highly deferential standard of review for legal-sufficiency claims.'" *Id.* (quoting *Haynes v. State*, 273 S.W.3d 183, 195 (Tex. Crim. App. 2008) (Keller J., dissenting) (citing *Jackson*, 443 U.S. at 319)). "We must therefore determine whether the evidence presented to the jury, viewed in the light most favorable to the verdict, proves beyond a reasonable doubt that appellant" committed the crime for which the jury found him guilty. *See id.* "It is the obligation and responsibility of appellate courts 'to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime that was charged.'" *Id.* at 882 (quoting *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)). "Furthermore, '[i]f the evidence at trial raises only a suspicion of guilt, even a strong one, then that evidence is insufficient [to convict].'" *Id.* (quoting *Urbano v. State*, 837 S.W.2d 114, 116 (Tex. Crim. App. 1992)), *superseded in part on other grounds*, *Herrin v. State*, 125 S.W.3d 436, 443 (Tex. Crim. App. 2002).

6

In a prosecution for possession of a controlled substance, the State must prove the accused exercised care, custody, control, or management over the substance and that the accused knew the substance was contraband. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West 2010) (stating "'Possession' means actual care, custody, control, or management"); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006) (stating the accused must know "the matter possessed was contraband"). "When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband.'" *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)). In *Evans*, the court of criminal appeals stated:

> Regardless of whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the drug was more than fortuitous. This is the so-called 'affirmative links' rule which protects the innocent bystander—a relative, friend, or even stranger to the actual possessor—from conviction merely because of his fortuitous proximity to someone else's drugs.

*Evans*, 202 S.W.3d at 161–62 (footnote omitted).

Relevant non-exclusive links tending to connect the accused to knowing possession include: (1) whether the accused was present when the search was conducted; (2) whether the contraband was in plain view; (3) whether the narcotic was in close proximity to and accessible by the accused; (4) whether the accused was under the influence of narcotics when arrested; (5) whether the accused possessed other contraband or narcotics when arrested; (6) whether the accused made incriminating

7

statements when arrested; (7) whether the accused tried to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether the accused either owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the accused's conduct indicated a consciousness of guilt. *Id.* at 162 n.12; *Isbell v. State*, 246 S.W.3d 235, 238 (Tex. App.—Eastland 2007, no pet.). The legal issue with respect to these "links" is "'whether there was evidence of circumstances, in addition to mere presence, that would adequately justify the conclusion that the defendant knowingly possessed the substance.'" *Evans*, 202 S.W.3d at 162 n.9 (quoting *Evans*, 202 S.W.3d at 166 (Womack, J., concurring)). "It is . . . not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Id.* at 162.

### 2. The Accomplice-Witness Rule

In *Smith v. State*, the court of criminal appeals stated that, "under Texas Code of Criminal Procedure Article 38.14, a conviction cannot stand on an accomplice witness's testimony unless the testimony is corroborated by other, non-accomplice evidence that tends to connect the accused to the offense." 332 S.W.3d 425, 439 (Tex. Crim. App. 2011) (citing TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005)). "An accomplice is a person who participates in the offense before, during, or after its commission with the requisite mental state." *Id.* (citing *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007)). "Presence at the crime scene does not make a person an accomplice; an

8

accomplice must have engaged in an affirmative act that promotes the commission of the offense that the accused committed." *Id.* (citing *Druery*, 225 S.W.3d at 498). "A person is not an accomplice if the person knew about the offense and failed to disclose it or helped the accused conceal it." *Id.* (citing *Gamez v. State*, 737 S.W.2d 315, 322 (Tex. Crim. App. 1987); *Druery*, 225 S.W.3d at 498; *Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006). "A witness who is indicted for the same offense or a lesser-included offense as the accused is an accomplice as a matter of law." *Id.*; *Cocke*, 201 S.W.3d at 748.

In the instant case, it is undisputed that Cibrian, who sold drugs from the apartment at 1430 16th Street and who subsequently pleaded guilty for his participation, is an accomplice. *See id.* (stating that "[a]n accomplice is a person who participates in the offense before, during, or after its commission with the requisite mental state.") (citing *Druery*, 225 S.W.3d at 498). Thus, for appellant's conviction to rest upon Cibrian's testimony, "'there must simply be some non-accomplice evidence which *tends* to connect appellant to the commission of the offense alleged in the indictment.'" *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008) (quoting *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997)) (emphasis in original).

### 3. Sufficiency of the Non-Accomplice Evidence

"When reviewing the sufficiency of non-accomplice evidence under Article 38.14, we decide whether the inculpatory evidence tends to connect the accused to the commission of the offense." *Id.* at 442 (citing *Brown v. State*, 672 S.W.2d 487, 488 (Tex. Crim. App. 1984)). "The sufficiency of non-accomplice evidence is judged according to

9

the particular facts and circumstances of each case." *Id.* (citing *Reed v. State*, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988)). "The direct or circumstantial non-accomplice evidence is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense." *Id.* (citing *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009); *Reed*, 744 S.W.2d at 126)). "[I]t is not appropriate for appellate courts to independently construe the non-accomplice evidence." *Id.* (citing *Simmons*, 282 S.W.3d at 508). Instead, we are required "to consider the combined force of all of the non-accomplice evidence that tends to connect the accused to the offense." *Id.* (citing *Mitchell v. State*, 650 S.W.2d 801, 807 (Tex. Crim. App. 1983)).

Here, to satisfy article 38.14, the State relied on the following non-accomplice evidence: (1) testimony that appellant was inside the apartment when the police entered it with the search warrant; (2) testimony that Investigator Leal did not see appellant enter the apartment (as appellant testified he did) just before he entered the apartment with the search warrant; (3) testimony that the baggy of cocaine was lying on the floor of the apartment in plain view; (4) testimony that prior to the time the police arrived at the apartment with the search warrant, appellant was frequently seen at the apartment. After considering the combined force of all of the non-accomplice evidence that tends to connect appellant to the offense, we hold the evidence is sufficient to tend to connect appellant to the offense for which he was convicted.

### 4. Analysis

Appellant's connection to the cocaine seized from the apartment was more than

fortuitous. The evidence showed Cibrian and appellant were partners in a cocaine-selling operation conducted from the apartment. When Cibrian arrived at the apartment on the day the police searched it, appellant was inside the apartment, and the cocaine was on a table. When the police entered the apartment with the search warrant, appellant was still in the apartment, and the cocaine wound up on the floor in plain view. The amount of cocaine seized from the apartment constituted 2.05 grams.

"In an unlawful possession of a controlled substance case, . . . the control need not be exclusive, but can be jointly exercised with one or more persons." *Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986). In this case, a rational jury could have reasonably concluded that appellant jointly possessed the cocaine in question for sale to customers. Accordingly, the evidence showed appellant knew the substance was contraband (cocaine) and that he exercised care, custody, control, or management over the substance. Viewing all of the evidence in the light most favorable to the verdict, as we must, a rational jury could have found beyond a reasonable doubt that appellant intentionally or knowingly possessed the cocaine that the officers found. *See Jackson*, 443 U.S. at 319; *Evans*, 202 S.W.3d at 162 n.12. We hold the evidence is legally sufficient to support appellant's conviction. Issue one is overruled.

## B. Drug-Free Zone

In issue two, appellant contends the evidence is legally and factually insufficient to sustain the jury finding that he possessed the cocaine in a drug-free zone. The indictment alleged the offense occurred in a drug-free zone under section 481.134(c) of the Texas Health & Safety Code. Specifically, the indictment alleged, in relevant part:

11

JACOB CIBRIAN AND ERWIN BURLEY, defendants, on or about AUGUST 12, 2010, in Nueces County, Texas, did then and there knowingly possess, with intent to deliver, a controlled substance, namely, COCAINE, in an amount of one gram or more but less than four grams,

And it is further presented in and to said Court that the Defendant committed the above within 1,000 feet of real property owned by a school, namely Allen Elementary School, . . . .

Section 481.134(c) of the Texas Health and Safety Code provides, in relevant part, "The *minimum* term of confinement or imprisonment for an offense otherwise punishable under Section . . . 481.115(c)-(f), . . . is increased by five years" if committed in a drug-free zone. TEX. HEALTH & SAFETY CODE ANN. 481.134(c) (emphasis added). Appellant's conviction is for an offense under section 481.115(c), which is listed within the drug-free-zone statute in subsection (c) of article 481.134. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.115(c), 481.134(c).

In this case, appellant was convicted of possession of one gram or more, but less than four grams of cocaine, a third-degree felony. *See id.* § 481.115(a), (c). "An individual adjudicated guilty of a felony of the third degree shall be punished by imprisonment in the Texas Department of Criminal Justice for any term of not more than 10 years or less than 2 years." TEX. PENAL CODE ANN. § 12.34(a) (West 2011). Even assuming there is no evidence to support the jury's finding that appellant possessed the cocaine in a drug-free zone; i.e., within 1,000 feet of real property owned by a school, namely Allen Elementary School, this would have only affected the *minimum* punishment for a third-degree felony. However, the jury also found that appellant had one previous felony conviction. Thus, he was sentenced as a repeat-felony offender and received a fourteen-year sentence. Section 12.42 of the Texas Penal Code provides, in relevant

part, that "[I]f it is shown on the trial of a felony of the third degree that the defendant has previously been finally convicted of a felony . . . on conviction the defendant shall be punished for a felony of the second degree."  *Id.* § 12.42(a) (West Supp. 2012).  "An individual adjudicated guilty of a felony of the second degree shall be punished by imprisonment in the Texas Department of Criminal Justice for any term of not more than 20 years or less than two years."  *Id.* § 12.33(a) (West 2011).

Appellant's conviction was enhanced from a third-degree felony to a second-degree felony, pursuant to section 12.42(a).  And, his punishment fell within the punishment range of a second-degree felony.  Accordingly, the issue whether the evidence is legally sufficient to support the jury's finding that appellant possessed the cocaine in a drug-free zone is irrelevant to the punishment and had no effect on appellant's sentence.  Issue two is overruled.

## III. CONCLUSION

The judgment of the trial court is affirmed.

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
31st day of August, 2012.

13