Junior BROWN, Appellant,

v.

The STATE of Texas, Appellee.

No. 1123–83.

Court of Criminal Appeals of Texas, En Banc.

July 18, 1984.

Jack P. Martin, Ralph H. Brock, Lubbock, for appellant.

Mac Smith, Dist. Atty. and Daniel W. Carney, Asst. Dist. Atty., Weatherford, Robert Huttash, State's Atty., and Cath-

leen R. Riedel, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TOM G. DAVIS, Judge.

Trial was before the jury upon appellant's plea of not guilty of aggravated robbery. After finding appellant guilty, the jury further found the enhancement allegations in the indictment to be true, and punishment was fixed at life.

The conviction was affirmed by the Court of Appeals for the Second Supreme Judicial District in *Brown v. State*, 659 S.W.2d 499 (Tex.App.—Fort Worth 1983). We granted appellant's petition for discretionary review in order to examine the Court of Appeals' holding that the evidence is sufficient to corroborate the testimony of the accomplice witness, Tommy Glynn McLoud.

McLoud testified that he, Wesley Patterson, and appellant met in Weatherford on December 15, 1981, and planned a robbery to take place the following morning. Appellant drove the two men by the victims' residence in a pickup truck that evening, and Patterson was instructed to return to cut the telephone line leading to the residence. The next morning appellant drove McLoud and Patterson back to the area, and after viewing the intended target again, dropped them off "about a block up the street" from the victims' residence. McLoud and Patterson were bearded and wore blue stocking caps, or "toboggans," and appellant was clean shaven. At approximately 9:00 a.m., under a pretext of buying jewelry, McLoud and Patterson entered the residence and robbed the 84-year-old complainant and her 93-year-old husband at gunpoint of cash, jewelry, a coin collection, and other items. The couple was placed in a closet while the residence was ransacked. McLoud looked out of the living room window periodically to make sure appellant was in the vicinity, and saw appellant parked at the nearby Cherry

Park. Approximately 45 minutes after they had entered the house, McLoud lost sight of appellant and he and Patterson decided to leave the residence to look for him. They failed to find appellant after walking around the neighborhood and decided to split up. McLoud walked back to Cherry Park, saw a police car, and fled into a nearby residence where he was apprehended.

The complainant testified that two men entered her home on December 16, and robbed her at gunpoint. After the robbers left, she attempted to call the police but the phone line had been cut.

Appellant contends the evidence is insufficient to corroborate the testimony of McLoud, an accomplice witness.

A conviction cannot be had upon the testimony of an accomplice witness unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense. Art. 38.14, V.A.C.C.P.

The test to determine the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then examine the testimony of other witnesses to ascertain if there is inculpatory evidence which *tends to link* the accused with the commission of the offense. *Meyers v. State*, 626 S.W.2d 778 (Tex.Cr.App.1982). All the facts and circumstances in evidence may be looked to for corroboration, *Paulus v. State*, 633 S.W.2d 827 (Tex.Cr.App.1982), and the corroborative evidence may be circumstantial or direct. Id. Furthermore, it is not necessary that the corroboration *directly link* the accused to the crime or be sufficient in itself to establish guilt. Id; *Reynolds v. State*, 489 S.W.2d 866 (Tex.Cr.App.1972).

The non-accomplice testimony which corroborates McLoud's testimony regarding appellant's complicity in the robbery consists of the testimony of Reginald Henderson and Officer Jonathan Hutson. Henderson, who lived across the street from Cher-

ry Park, testified that at about 8:15 a.m. on December 16, he saw a black and gray pickup truck stopped at a stop sign next to his house. Three men were in the truck, two with beards and stocking caps, and one clean shaven. He saw the "same pickup" shortly thereafter parked at Cherry Park, with one man in it. A short time later, he saw the truck parked on the other side of the park. Henderson became concerned because children were playing at the park and he thought "that someone was trying to pick up one of the little kids." He continued watching the truck and after seeing it circle the park 15 or 16 times, wrote down the license number and called the police at approximately 9:30 a.m. At approximately 10:00 a.m. Henderson again phoned the police when he saw the two other men who had been in the truck earlier that morning. The men were standing on the corner, and he watched them walk around the block and return to the park area where they stood talking and looking around. The two split up, and one walked into the park and ran off when a police car arrived.

Officer Hutson testified he responded to a "suspicious vehicle call" and arrived at Cherry Park at 9:40 a.m. on December 16, 1981. He was looking for a pickup truck with the license number reported by Henderson to the police. After circling the park twice, he drove north on one of the streets abutting the park and saw appellant seated behind the wheel of a pickup truck matching the description and license number given to him. Hutson testified that when he "made eye contact" with appellant, appellant "got kind of a panicky look on his face," and appeared to put the truck into gear and drive off without having to start his vehicle. The officer observed appellant make an improper left turn, followed appellant, and stopped him. After looking at appellant's driver's license, Hutson asked appellant if he had been with two other people that morning. Appellant replied that "he had been alone all morning and that he was waiting for a friend at Cherry Park." Hutson returned the license to appellant, and appellant drove away. Hutson drove back to Cherry Park and saw McLoud, who ran away and was later captured. Appellant was not seen in the park area thereafter.

We find the non-accomplice testimony sufficient to corroborate McLoud's testimony. This testimony places appellant near the scene of the crime at the time of its commission. Proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction. *Passmore v. State*, 617 S.W.2d 682 (Tex.Cr.App.1981); *Rodriguez v. State*, 521 S.W.2d 80 (Tex. Cr.App.1974); *Edwards v. State*, 427 S.W.2d 629 (Tex.Cr.App.1968). Here, the suspicious circumstances include appellant's presence with the accomplice witness shortly before the commission of the offense,[1] see *Passmore v. State*, supra; repeatedly circling the park while the robbery took place; appearing to panic and driving away when the police appeared; and denying being with McLoud and Patterson that morning when questioned by the officer.

The judgment of the Court of Appeals is affirmed.

---

1. Contrary to appellant's contention, it is a reasonable deduction from the evidence that appellant was in the presence of the accomplice witness the morning of the robbery. Henderson saw three men in the truck, two bearded and one clean shaven. Thereafter he saw the same truck occupied by one man. The two bearded men, McLoud and Patterson, were seen walking about the neighborhood. Appellant was in the truck alone when stopped by Officer Hutson.