11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

William Green Biggs, Jr.

Appellant

Vs.                   No. 11-01-00049-CR   B  Appeal from Collin County

State of Texas

Appellee

                                                                                                

The jury convicted William Green Biggs, Jr.
of possession of a controlled substance Awith intent to deliver@ cocaine.  The trial court found
that four of the enhancement paragraphs were true and assessed appellant=s punishment at confinement for 75
years.  We affirm.

                                                                  Issues
Presented

Appellant argues in his first six grounds of
error[1]
that the evidence is neither Alegally sufficient@ nor Afactually sufficient@ to prove that appellant Aknew the substance to be cocaine,@ to prove that he Ahad actual care, custody, control or
management over the cocaine,@ or to prove that he Ahad the intent to deliver cocaine.@  Appellant then argues in his
seventh ground of error that the trial court abused its discretion by
overruling his motion to suppress evidence and in his final ground of error
that the State failed to Aprovide sufficient evidence to corroborate@ the accomplice testimony.

                                                                    The
Evidence








The first witness, Officer David Christopher
Schaffer, testified that he was employed by the City of Plano and that he was
assigned to the narcotics unit as an investigator.  Officer Schaffer testified that he received an anonymous phone
call on January 7, 2000, which advised him about Aa subject named Bill,@ a tall, skinny black male who was missing four fingers on one of his
hands.  The confidential informant told
Officer Schaffer that ABill@ was Astaying with@
Patricia and Craig Likus at 1401 Sherry Drive; that ABill@ would be driving one of three different vehicles which the informant
described; and that ABill@ would be going to Dallas that afternoon to
purchase Acrack cocaine@ which he would bring back to Plano for sale to Plano residents.  Officer Schaffer decided to sit in his car
near the service road for U.S. Highway 75 at the Home Depot because that was
the Amost logical location@ that ABill@ and his companion would come by as they came
back into town if they were going to that address.  Officer Schaffer testified that Asure enough, a little after 4:00 a green truck drove by@; 
that there was a Ablack male driver@ and a Awhite female passenger@ which fit the descriptions which he had been
given; and that the green, regular-cab Chevrolet pickup was one of the three
vehicles which had been described for him. 
Officer Schaffer followed the vehicle until it pulled into the back
parking lot of the post office in Plano. 
Officer Schaffer testified that he saw appellant talk to a person (later
identified as Terry Freeman) while they were in the parking lot at the post
office.








After a hearing outside the jury=s presence, Officer Schaffer=s testimony continued.  He testified that there was a passenger in
appellant=s pickup (later identified as Patricia Likus)
who was Alooking around@ while appellant was talking to Freeman.  Officer Schaffer testified that it Alooked like a drug sale@ and that Likus was Aobviously nervous about what was going on.@ 
There was a Avery
short contact@ between appellant and Freeman.  Appellant and Likus then left the post
office and drove to the location where they were arrested.  Officer Schaffer was trying to coordinate
with Sergeant Aubrey Dale Paul, Jr. and the patrol units which were assisting
them.  Officer Schaffer and Sergeant
Paul were in Aundercover vehicles,@ and they were waiting for a squad car to
make the actual arrests.  The narcotics
officers used the police radio system to tell the uniformed officers to stop
appellant and his passenger for an Ainvestigatory stop.@  Officer Schaffer testified
that he arrived at the scene while the other officers were talking to Likus and
that he heard her give oral consent for them to search her purse.  The crack cocaine was found during the
search of her purse.  Officer Schaffer
took the crack cocaine which was found and logged it into evidence after they Afield tested@ it.  The crack cocaine was then
sent to a Department of Public Safety lab for clinical testing.       During
cross-examination, Officer Schaffer agreed that the did not see Aany money exchanged@ and that he did not see Aany objects@ exchanged between appellant and Freeman.  Officer Schaffer testified that he saw appellant Alean into the vehicle@ occupied by Freeman.  Officer Schaffer agreed that he did not know
Awhat was said@ between appellant and Freeman. 
During redirect examination, Officer Schaffer identified appellant as
the man who was with Likus when the cocaine was found in her purse.  At that time, appellant was asked to show
the jury his right hand, and the record shows that appellant had Aonly a thumb on his right hand and no
fingers.@

The second witness was Sergeant Aubrey Dale
Paul, Jr. of the Plano Police Department; he was the supervisor of the
narcotics unit at the time of appellant=s arrest.  On January 7, Officer
Schaffer requested Sergeant Paul=s assistance on the operation involving appellant.  Their initial plan was to locate appellant
on a public road and get a marked unit to stop him and find out if he was in
possession of some type of cocaine. 
Sergeant Paul explained that sometimes they will stop a suspect after a
traffic violation.  Sergeant Paul also
testified that sometimes they will stop a suspect, explain that they Ahave information@ that the suspect might have some cocaine,
and ask for permission to search for the cocaine.  Sergeant Paul testified that he also went to the Home Depot
parking lot to observe the northbound service road traffic at that
location.  Sergeant Paul and Officer
Schaffer were talking on the police radio, and Sergeant Paul went in his
undercover unit to the post office where he also saw appellant=s pickup parked at the post office.  Sergeant Paul saw Aa white female in the passenger seat looking
around, looking back and forth and down the street.@  It
was a green pickup, and the female passenger was later identified as Patricia
Likus.  Sergeant Paul said that it
appeared to him that appellant Amade contact with the driver@ of the other vehicle on the driver=s side of that vehicle and that it appeared to him that appellant Aeither entered the vehicle or he bent down or
he knelt down to talk to the driver.@  Sergeant Paul testified that Aa few moments later@ he saw appellant reenter the pickup on the
driver=s side. 
Sergeant Paul testified that he and Officer Schaffer were in radio
communication with other officers while this was going on.  When appellant=s pickup left the parking lot, Sergeant Paul maintained surveillance on
the other vehicle until a squad car entered the parking lot to make contact
with its occupant (who was later identified as Terry Freeman).  Sergeant Paul walked up to that vehicle to
assist the uniformed officers, and they found a Ahomemade crack pipe@ in that vehicle.  








Sergeant Paul testified that the movements of
Freeman within his vehicle Awere consistent with someone ingesting crack cocaine.@ 
Sergeant Paul also identified the crack pipe which was found in Freeman=s car, and he testified that Freeman was
dressed in Aa United States postal uniform.@ 
Freeman was detained[2]
in the parking lot of the post office where he worked.  Sergeant Paul said that Freeman was very
upset when he was detained and that he was Acrying, shaking, scared.@  Sergeant Paul instructed the
other units to stop appellant and take him into custody.

During cross-examination, Sergeant Paul
agreed that he did not see anything exchanged between appellant and Freeman,
and Sergeant Paul agreed that he was not at the scene of the arrest when the
cocaine was found in the purse of appellant=s passenger.  On redirect
examination, Sergeant Paul said that he and Officer Milton got to Freeman=s car 
Aright at a minute@ after appellant=s pickup left the parking lot and that he Aimmediately@ relayed information to the other units that Freeman had admitted
receiving cocaine from the driver of the pickup.  Sergeant Paul said that the radio traffic indicated to him that
appellant=s vehicle had not been stopped before he
relayed that information to the other units. 
At that time, he believed that he had Areasonable suspicion@ for the other officers to stop appellant=s pickup and request permission to search.  Sergeant Paul testified that, if appellant had 9.9 grams[3]
of crack cocaine, it would have a Astreet value@ of
about $500.  His opinion was that this
would be more than for Apersonal@ use and that it could show an intent to
deliver the drug to other people. 

The third witness was Officer James T. Milton
of the Plano police department.  He was
working in the patrol division on January 7 when he came Ain contact@ with Freeman.  He responded to
a radio call from Sergeant Paul Ato come to their assistance in regards to a narcotics transaction they
had just witnessed.@  Officer Milton went to the blue Chevy
Cavalier which was parked at the post office. 
When the Chevy Cavalier tried to pull out of the parking lot, Officer
Milton pulled in behind it.  He told the
driver to Astop@ and asked him: AWhere=s the crack?@  The answer was: AI smoked it.@  When Freeman Astarted reaching behind his back,@ Officer Milton grabbed Freeman=s arm and held him.  Sergeant Paul came up almost immediately.  While Sergeant Paul was talking to Freeman,
Officer Milton wrote a citation for possession of drug paraphernalia.  Officer Milton said that the crack pipe
which they found on the passenger seat in Freeman=s car was Awarm
to the touch.@  








The fourth witness was Kaye Davis, a chemist
with the Texas Department of Public Safety Crime Laboratory, who testified that
the exhibit which was sent to her was tested and found to contain 9.72 grams of
cocaine.

The fifth witness was Officer Bart Bruton of
the Plano police department.  He
testified that he was on duty on January 7 when he came Ainto contact@ with appellant.  Officer Bruton
was in a Ablack and white squad@ car, and he heard a call on the police radio
to Ago ahead and stop@ the suspect because the other officers Ahad just seen what they thought was a
narcotics deal go down.@  That is when Officer Bruton
activated his overhead lights and stopped appellant=s pickup. 
The other vehicle had pulled into a driveway, and Officer Bruton
contacted the driver who identified himself with a driver=s license issued to William Biggs
(appellant).  Another police officer
contacted the passenger while Officer Bruton talked to appellant.  Appellant said that it was not his pickup,
and he pointed to the passenger as the owner of the pickup.  Appellant then yelled at her: ADon=t let him search your truck.@  At that time, Officer Bruton
put appellant into handcuffs and placed him in the back of the patrol car.  Officer Bruton then asked the passenger for
her consent to search the vehicle, and she agreed to let them search the
pickup.  They were looking for cocaine
because of the information which they had received from the other
officers.  When they did not find any
cocaine in the pickup,  Officer Bruton
asked the passenger for permission to search her purse.  He testified that she agreed.  The female police officer searched the
passenger=s purse and found the cocaine.  The officers then took appellant and his
passenger into custody and transported them to jail.  Officer Schaffer took control of the substance which later proved
to be cocaine.








There was also testimony by Officer Bruton
about giving appellant a citation for Afailing to stop at a designated point@ and whether or not there were Astop lines@ at
the intersection at the time of appellant=s arrest.  Whether the Astop lines@ were present at that time is of no consequence because the police
officers had Areasonable suspicion@ which would permit them to approach
appellant=s vehicle and request permission for the
search.[4]  During his cross-examination, Officer Bruton
testified that, when he stopped the vehicle which appellant was driving, he had
already been told Ato go
ahead and stop him@
regardless of the traffic violation. 
Since it was not appellant=s vehicle, appellant could not prevent the passenger from giving her
consent to the search of the vehicle or the purse.  Officer Bruton agreed that no cocaine or other contraband was
found on appellant when he was searched. 


The sixth witness was Officer Camille Bowie
of the Plano police department.  She
assisted in the drug investigation on January 7, and she testified that Officer
Bruton turned on his overhead lights when the pickup which appellant was
driving pulled into a driveway.  Officer
Bowie said that they were receiving instructions over the police radio and that
Sergeant Paul told them to stop the pickup because the officers had witnessed a
narcotics exchange.  Officer Bowie said
that Officer Bruton made contact with the driver and that Officer Bowie went to
the passenger=s side of the pickup.  After other officers arrived, the passenger
got out of the pickup.  Officer Bowie
testified that Officer Bruton asked the passenger if it was her pickup and if
they could have her consent for them to search the pickup.  The passenger was identified as Patricia
Likus, and Officer Bowie testified that Likus said that it was her pickup and
that she gave them permission to search. 
Officer Bowie also testified that appellant was Ayelling and saying you don=t have to let them search the vehicle.@  They
did not find any controlled substances when they searched the pickup.  Officer Bowie testified that Likus agreed
that they could search her purse. 
Officer Bowie searched the purse and found the cocaine.  Officer Bowie gave the cocaine to Officer Schaffer,
arrested Likus, and took her to the jail.








Patricia Ann Likus was the last witness for
the State.  She testified that she was
with appellant on January 7 when he was driving her husband=s pickup. 
She identified appellant for the jury, and she testified that appellant
received a phone call on his cell phone. 
After that, they stopped at the post office in Plano.  Likus testified that she knew Freeman and that
Freeman was the man that appellant met at the post office.  Likus testified that appellant got out of
the pickup and went to the passenger side of Freeman=s car. 
She testified that she knew it was a Adrug deal@ and
that appellant was delivering crack cocaine to Freeman.  After the delivery, appellant got back into
the pickup, and they left the post office. 
When appellant pulled into the driveway, two police officers approached
them.  The female officer was on the
passenger side, and the male officer was on the other side.  Likus testified that appellant had the
cocaine in his sock before he put it into her purse.  While the two of them were by themselves, appellant told her that
he had put it into her purse.  Likus
agreed that she gave the officers her consent to search the vehicle and that
appellant was yelling at her to Atell them no.@  Her purse was in the pickup when she gave
the officers permission to search the pickup. 
Likus testified that they did not ask Aspecifically@ for
permission to search her purse.  Likus
said that she told the police at that time that she did not know that the
cocaine was in her purse and that it was not her cocaine.  Likus admitted during her testimony that she
did know that appellant had put the cocaine in her purse before the female
officer found it there.  Likus testified
that she pleaded guilty to possession of cocaine with the intent to deliver and
was sentenced to probation for seven years. 
Likus said that she had to pay a fine of $1,000, report to a probation
officer, do community service, and submit to drug testing.  Likus testified that she did not want to
testify against her friend but that she had been subpoenaed by the State.  Likus said that she was not promised any
leniency in exchange for her testimony.

The State rested, and appellant called only
one witness.  That witness was Tim Love,
traffic supervisor for the City of Plano, who testified that there were no
marked crosswalks at the intersection where Officer Bruton had given appellant
the traffic citation.  As noted above,
whether the Astop lines@ were present or not is of no consequence because the officers had Areasonable suspicion@ which would permit them to approach
appellant=s vehicle and request permission for the
search.[5]

                                                          Sufficiency
of the Evidence

In reviewing claims that the evidence is not Alegally sufficient@ to support a conviction, an appellate court
is required to Aview the evidence in the light most favorable
to the verdict@ and determine whether Aany rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.@ 
Jackson v. Virginia, 443 U.S. 307, 319 (1979); Mason v. State, 905
S.W.2d 570, 574 (Tex.Cr.App.1995), cert. den=d, 516 U.S. 1051 (1996).  The
jury is the exclusive judge of the credibility of the witnesses and of the
weight which is to be given to their testimony.  Barnes v. State, 876 S.W.2d 316, 321 (Tex.Cr.App.), cert. den=d, 513 U.S. 861 (1994).

In reviewing claims that the evidence is not Afactually sufficient@ to support a conviction, an appellate court
is to set aside the conviction only if it is Aso contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust.@  Clewis v. State, 922 S.W.2d 126, 129
(Tex.Cr.App.1996).








The evidence which has been quoted or
summarized earlier in this opinion is both Alegally sufficient@ and Afactually sufficient@ to support the jury=s finding that appellant Aknew the substance to be cocaine@; that appellant Ahad actual care, custody, control or
management over the cocaine@; and that appellant Ahad the intent to deliver cocaine.@  Grounds of Error Nos. 1
through 6 are overruled.

                                                       Warrantless
Arrest and Search                 

Appellant did not have standing to complain
of the search.  It was not his vehicle
or his  purse.  The evidence supports the jury=s finding that Likus had the power to consent to both of the searches
and that she gave her permission for the police to search the vehicle and the
purse.  The police officers in this case
had Areasonable suspicion@ to make a temporary detention of appellant
and his passenger, to ask them questions, and to request permission to
search.  See Terry v. Ohio, 392 U.S. 1,
31 (1968); Rhodes v. State, 945 S.W.2d 115, 117 (Tex.Cr.App.1997), cert. den=d, 522 U.S. 894 (1997).  When
Officer Bowie found the cocaine in the passenger=s purse, the officers were authorized to make a warrantless arrest of
appellant and his passenger.  See TEX.
CODE CRIM. PRO. ANN. arts. 14.01(b) & 14.03 (Vernon 1977 & Supp. 2002).

Appellate courts are required to review the
trial court=s rulings on motions to suppress evidence by
looking at the Ahistorical facts@ in the light Amost favorable to the trial court=s ruling.@  Carmouche v. State, 10 S.W.3d 323, 327-28
(Tex.Cr.App.2000).  Ground of Error No.
7 is overruled.

                                                Corroboration
of Accomplice Testimony

TEX. CODE CRIM. PRO. ANN. art. 38.14 (Vernon
1979) provides that a conviction based upon the testimony of an accomplice
cannot be affirmed unless that testimony is Acorroborated by other evidence tending to connect the defendant
with the offense committed.@  (Emphasis added)  The Court of Criminal Appeals discussed this
statute in Brown v. State, 672 S.W.2d 487, 488 (Tex.Cr.App.1984), and said:

The test to determine the sufficiency of the
corroboration is to eliminate from consideration the evidence of the accomplice
witness and then examine the testimony of other witnesses to ascertain if there
is inculpatory evidence which tends to link the accused with the
commission of the offense.  All the
facts and circumstances in evidence may be looked to for corroboration, and the
corroborative evidence may be circumstantial or direct.  Furthermore, it is not necessary that the
corroboration directly link the accused to the crime or be sufficient in
itself to establish guilt.  (Emphasis in
original; Citations omitted)








The testimony of the accomplice, Likus, is
corroborated by testimony from the police officers.  Their testimony tends to connect appellant with possession of the
cocaine.  Some of the officers saw
appellant talk to Freeman just before the officers found Freeman in possession
of a crack pipe which was still warm, and other officers heard appellant
yelling to his passenger and asking her not to let them search the pickup.  Ground of Error No. 8 is overruled.

                                                                This
Court=s Ruling

The judgment of the trial court is affirmed.

 

 

BOB DICKENSON

SENIOR JUSTICE

 

August 1, 2002

Do not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of: Arnot, C.J., and

McCall, J., and Dickenson, S.J.[6]











[1]These are the Aissues
or points presented for review@ under
TEX.R.APP.P. 38.1(e).





[2]Freeman was not arrested, but he was issued a citation
for possession of drug paraphernalia.





[3]The record shows that the actual amount of cocaine was
9.72 grams.  On redirect examination, he
said that he would still Around it off@ to
10 grams.





[4]See the authorities which are discussed below in
connection with appellant=s seventh ground of error.





[5]See the authorities which are discussed below in
connection with appellant=s seventh ground of error.





[6]Bob Dickenson, Retired Justice, Court of Appeals, 11th
District of Texas at Eastland sitting by assignment.