**MODIFY and AFFIRM; and Opinion File March 13, 2013.**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-11-01725-CR

### DEMARIO RIGGS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from Criminal District Court No. 7
Dallas County, Texas
Trial Court Cause No. F11-33977-Y**

# MEMORANDUM OPINION

Before Justices Bridges, O'Neill, and Murphy
Opinion By Justice Murphy

DeMario Riggs appeals from his jury conviction for attempted burglary of a habitation with intent to commit theft. In three points of error, he asserts the evidence is insufficient to corroborate the accomplice witness's testimony, the trial court failed to instruct the jury that the accomplice witness's testimony must be corroborated by other evidence, and the judgment should be modified to reflect the correct prosecuting attorneys' names. We affirm as modified.

### Background

Officer James Ball with the Irving Police Department responded to a 911 call by Tammy Washington on the morning of March 28, 2011. Washington testified she had been a United States postal employee since 1996 and she normally worked nights. The morning of March 28, she had

been sleeping in her upstairs bedroom of the two-story apartment she shared with her two sons. Benjamin was nineteen and was home from school. Earnest Jefferson was her twenty-one year-old son, for whom she had been the guardian since his father died in 2008.

Jefferson came into her bedroom "[v]ery panicked" and said "I think someone's trying to break in." He repeated what he had said and Washington jumped up. She heard "a terrible noise, like somebody was just kicking the door," and she found her phone and dialed 911. She went to her window and "saw a black male standing there" and he was "steadily kicking and kicking and kicking." She remained at the window while talking to the dispatcher and gave a description of the man wearing a red hat, jacket, and blue jeans. She saw only one man. She testified that both Benjamin and Jefferson ran downstairs and, when they did not respond to her, she ran after them. By the time she got downstairs, the police officers had arrived. Her door "was totally demolished."

Jefferson testified he first heard someone knocking on the front door that morning, whom he identified during cross-examination as appellant. He went upstairs to warn Washington and went back downstairs and heard someone kicking in the back door. He said the man kicking the door had what looked like a cross tattoo on his forehead. He also said he saw shadows of another person in the back patio area but was unable to describe anyone other than the person with the tattoo. On cross-examination he described appellant as someone who had been to the home earlier with his cousin and Benjamin had let them in. On the morning of March 28, Jefferson did not let appellant in and had a "sense" that something "was getting ready to go down at [his] apartment."

Ball, a thirty-year officer with the Irving Police Department, was on patrol and was dispatched to Washington's apartment. He was "practically around the corner from the apartment complex" and arrived in less than a minute of receiving the dispatch. Based on the dispatch information, he was looking for a black male wearing a red baseball cap. Not far from Washington's

-2-

apartment, he saw two men walking with their backs to him through the walkway between two buildings in the same apartment complex. Ball got out of his patrol car, drew his weapon, identified himself, and ordered the men to the ground. He identified appellant at trial as one of the men. Appellant was slower to comply with Ball's command to show his hands and "kept trying to slowly bring his hands back underneath him," so Ball "pulled [his] Taser" and warned him not to hide his hands. When Ball's backup arrived and they were able to handcuff the men, he discovered appellant was wearing a partial surgical glove that appeared to have been ripped off in a hurry. When the other man, later identified as James Jones, finally opened his fist, rubber gloves fell to the ground. Ball returned to Washington's apartment, where he examined the door and observed mud behind the apartment area with fresh shoe prints of "two different sets" of shoes. Ball testified he had looked at appellant's shoes, which were muddy, but did not personally compare them to the prints.

Jones, who was the man wearing the red baseball cap, testified for the State at trial. He said he and appellant decided to go to Irving to "get a TV" from someone. He testified he and appellant went to The Dollar Store and purchased latex gloves before going to Washington's apartment. He said appellant knew the person from whom they were going to take a television. Jones testified he and appellant arrived at Washington's apartment, went to the back of the house, and took turns kicking on the back door. He said they heard a woman call out a name, and they ran. The men were about three apartments away when police officers arrived. Jones was wearing blue jeans, a white t-shirt, boots, and a red cap; appellant was wearing a "[h]oody."

Jones and appellant were both charged with attempted burglary of a habitation. At the time of appellant's trial, Jones had already been to court and received his punishment.

### Sufficiency of the Evidence

Appellant first challenges the sufficiency of the evidence to corroborate Jones's accomplice

-3-

testimony. The sufficiency of evidence involving accomplice testimony is addressed by article 38.14 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). Specifically, accomplice testimony alone is insufficient to support a conviction; "other evidence tending to connect the defendant with the offense" is required, and that evidence must do more than merely show the commission of the offense. *Id.* We must determine, in reviewing appellant's challenge to the sufficiency of the non-accomplice evidence, whether the direct and circumstantial non-accomplice evidence shows that rational jurors could have found the non-accomplice evidence sufficiently tended to connect appellant to the offense. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). We consider "the combined force of all of the non-accomplice evidence that tends to connect [appellant] to the offense," and if there is a conflict in the evidence, we defer to the jury's resolution. *Id.* The non-accomplice evidence need not be sufficient to establish guilt by itself. *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997).

Appellant's presence at or near the scene of the crime at the time of the offense is relevant corroborating evidence. *Id.* That evidence may be sufficient corroborating evidence if it is coupled with other suspicious circumstances that tend to connect him to the offense. *Smith*, 332 S.W.3d at 443; *Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984). Mere presence at the scene, however, is insufficient corroborating evidence. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008).

Four witnesses testified at the guilt-innocence stage of the trial: in addition to Jones—the accomplice—Washington, Jefferson, and Ball testified. Washington heard someone kicking in the apartment door and "saw a black male standing" by the back patio when she looked out the window. She described the man to the 911 dispatcher as wearing a red hat, jacket, and blue jeans. Jefferson testified that appellant was knocking on the front door and, although he knew him because he had

-4-

been to the home earlier, he did not let him in. He went upstairs to warn Washington and then came back downstairs. He saw the same man with what he thought was a cross tattoo on his head kicking in the back door and saw the shadow of another person in the back patio area.

Ball, who responded to Washington's 911 call, arrived within a minute of the dispatch and saw a man in a red baseball cap walking with a person later identified as appellant. When Ball apprehended the two men, appellant had surgical-glove remnants in his right hand, which appeared to have been ripped off hurriedly. Jones dropped rubber gloves when he opened his fists. Ball testified the gloves were consistent with those used by individuals attempting to avoid leaving fingerprints at crime scenes. Appellant also had muddy shoes. When he returned to Washington's apartment, Ball observed damage to the back door and two different sets of fresh shoe prints in the mud by the patio.

This evidence showed appellant was not merely present at the scene. Ball discovered appellant with Jones, who matched the physical description given by Washington, his shoes were muddy, and both men had surgical gloves. Additionally, both men attempted to hide the gloves, and the partial glove in appellant's right hand appeared to have been ripped off in a hurry. Jefferson also identified appellant as the man he saw knocking on the door and whom he had seen at the apartment before. These circumstances provided proof not only of appellant's presence at the crime scene, but also that presence was coupled with evidence of suspicious circumstances that tended to connect appellant to the offense. *See Smith*, 332 S.W.3d at 443; *McDuff*, 939 S.W.3d at 613.

Appellant argues that Jefferson's testimony was untrustworthy and conflicting, especially regarding whether appellant was the man with the cross tattoo. Any conflict in the evidence, however, was resolved by the jury, and we defer to that resolution. *Smith*, 332 S.W.3d at 442. We overrule appellant's sufficiency point of error.

## Charge Error

Appellant contends in his second point of error that the trial court erred by failing to instruct the jury that Jones's testimony must be corroborated by other evidence. When reviewing a claim of jury-charge error, we first must determine whether error exists. *Druery v. State*, 225 S.W.3d 491, 504 (Tex. Crim. App. 2007). If error exists, we then address whether the error caused sufficient harm to require reversal. *Id.* The degree of harm required depends on whether appellant objected below. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). If appellant objected to the error at trial, reversal is required if the error "is calculated to injure [his] rights," which has been defined to mean that there is "some harm." *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (quoting *Almanza*, 686 S.W.2d at 171). In this case, however, appellant did not object. Therefore, the error must be "fundamental" and reversal is required only if the error was so egregious and created such harm that appellant did not have a fair and impartial trial. *Id.* Regarding non-accomplice testimony under the egregious-harm standard, omission of an accomplice-witness instruction is generally harmless unless the "corroborating (non-accomplice) evidence is 'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.'" *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002) (quoting *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991)).

The court's charge did not include an accomplice-witness instruction. And although the failure to provide the instruction was error, we conclude such error did not cause appellant egregious harm. *See Cocke v. State*, 201 S.W.3d 744, 747–48 (Tex. Crim. App. 2006) ("If a witness is an accomplice as a matter of law, the trial court is required to provide an accomplice-witness instruction to the jury."). The non-accomplice evidence described regarding appellant's sufficiency point applies to our analysis of appellant's claim of egregious harm. Ball and Jefferson provided evidence

sufficient to connect appellant to the crime scene and the offense based on his identification, presence, and the state in which he was found at the scene—with muddy shoes and a partial rubber glove in his hand. Washington also provided the description allowing Ball to apprehend Jones, with whom appellant was found. This evidence was not so unconvincing or weak that it rendered the entire case clearly and significantly less persuasive. *See Herron*, 86 S.W.3d at 632. We overrule appellant's second point of error.

## Modification of the Judgment

Appellant requests modification of the judgment to identify the names of the prosecuting attorneys in the case—Schwannah McCarthy and Marc Moffitt. The State agrees the written judgment incorrectly identifies the "Attorney for [the] State" as "Elaine Evans." The record provides the necessary information to correct the judgment, and this Court has the authority to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). We therefore sustain appellant's third point of error and modify the judgment accordingly.

As modified, we affirm the trial court's judgment.

_____
MARY MURPHY
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
111725F.U05

111725F.U05

—7—



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DEMARIO RIGGS, Appellant

No. 05-11-01725-CR      V.

THE STATE OF TEXAS, Appellee

Appeal from the Criminal District Court No. 7 of Dallas County, Texas. (Tr.Ct.No. F11-33977-Y).
Opinion delivered by Justice Murphy, Justices Bridges and O'Neill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The "Attorney for State" is modified to read: "Schwannah McCarthy and Marc Moffitt."

As modified, the judgment is **AFFIRMED**.

Judgment entered March 13, 2013.

_____
MARY MURPHY
JUSTICE