In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00248-CR
_____

CHARLES EDWARD ISSAC, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 1st District Court
Newton County, Texas
Trial Cause No. ND 6666

**MEMORANDUM OPINION**

Charles Edward Issac appeals his conviction for aggravated robbery. In one issue, he argues that there is insufficient non-accomplice corroborating evidence connecting him to the offense. We affirm the trial court's judgment.

BACKGROUND

On February 2, 2011, a black male armed with a handgun entered the Exxon convenience store in Bon Wier, Texas, and demanded money and cigarettes. The

robber was wearing a blue bandana over his face, exposing only his eyes. After obtaining cash, cigarettes, and the store clerk's cell phone, the robber fled the scene.

Appellant was indicted for aggravated robbery as a party to the crime. At trial, the State presented evidence that appellant helped plan the robbery, participated in the robbery by casing the store immediately prior to the robbery, waited by the store while a third person committed the robbery, and received a share of the money and cigarettes obtained in the robbery. Three accomplice witnesses, Allen McCain, Jessica McCain and Tommy Brown, testified for the State. A jury convicted appellant of aggravated robbery and sentenced him to six years confinement in the Texas Department of Criminal Justice. The trial court entered judgment in accordance with the jury's verdict and this appeal followed. In his sole issue on appeal, appellant contends the evidence is insufficient to support the jury's verdict because the testimony of the accomplice witnesses is not sufficiently corroborated by other evidence tending to connect appellant to the crime. We affirm the judgment of the trial court.

EVIDENCE PRESENTED AT TRIAL

Allen McCain testified that on the day of the robbery he and appellant were at their friend Laneshia's trailer, which is located around the corner from the

2

Exxon store. Allen stated that he heard appellant on the phone talking to someone about robbing the Exxon store. When appellant hung up, he asked Allen if he wanted in on the store robbery. Allen said he did. According to Allen, later that same day, prior to the robbery, he walked from Laneshia's trailer to the Exxon store. Allen testified that when he arrived at the store, he found Jessica McCain, Tommy Brown, and appellant already there. Allen testified that Jessica, Tommy, and appellant drove to the store in Tommy's maroon SUV. Allen testified that they all made purchases and then they returned to Laneshia's trailer inTommy's SUV. Allen recalled that on the way back to Laneshia's trailer they passed some guys in an SUV and appellant spoke to them.

Allen testified that upon returning to Laneshia's trailer, he and appellant stayed for "a short second" and then they returned to the Exxon store in Tommy's SUV. Appellant drove. Allen testified that they made a pass through the store parking lot and then went and parked on the right side of the store across from the post office. Allen testified that they were waiting for the "other boys" to rob the store. Allen initially testified he did not know their names, but stated that it was the same guys they had passed on the road earlier. On cross-examination, Allen admitted making a written statement in which he stated that he and appellant

3

returned to the store, then they waited for "Chris and Brandon Diggles[,]" and then he "watched Chris Simmons go in and rob the store."[1]

Allen testified that he saw one of the guys go into the store, and he and appellant sat in the car for a few more minutes. Allen stated that he did not see the guy come out of the store, but a few minutes later he and appellant followed the robbers' vehicle and met up with them on a dirt road. Allen stated that "the Simmons dude" threw some money and cigarettes to them through the car window and then Allen and appellant returned to Laneshia's trailer. Allen testified the cigarettes were Newport brand cigarettes.

Jessica McCain, Allen's sister, also testified at trial. Jessica testified that she knew appellant and she identified him for the jury. Jessica stated that on the day of the robbery she went to the Exxon store with appellant, Tommy Brown, and Allen. Jessica explained that they went to the store in Tommy's maroon Ford Escape and appellant drove. She recalled that they were only in the store a few minutes and

---

[1] While he testified on direct that he did not know the name of the guy that he watched go in to rob the Exxon store, Allen admitted on cross-examination that he made a written statement in which he said he and appellant "pull[ed] up and wait[ed] until Chris and Brandon Diggles came up and parked close by the post office." He further admitted that he originally stated he "watched Chris go in and rob the store." However, in regards to the robber's identity, Allen testified that in the statement he was "[g]oing by what [he] heard at the time on the streets." The written statement, which was offered as Defendant's Exhibit 1, does not appear to have been admitted into evidence and is not in the record before us.

then they returned to Laneshia's trailer. Jessica stated that on the way back to Laneshia's trailer they passed "Chris and Brandon" and they yelled out the window to them, "What's up" and then continued on to Laneshia's trailer. Jessica testified that a few minutes after they arrived back at the trailer, appellant asked Tommy for the keys to his SUV. Jessica could not say for certain whether Allen went with appellant, but she testified that she also saw Allen leave the trailer after appellant. Jessica stated that appellant and Allen were gone for roughly half an hour. When they returned, appellant went to the back of the trailer and Jessica saw Allen with some cigarettes.

Tommy Brown also testified for the State. Tommy testified that on the day of the robbery, he went to the Exxon store with Jessica, Allen, and appellant. Tommy stated they used his vehicle, but that appellant drove. Tommy stated that they all went inside the store and were there about ten minutes. When they left the store, they went back to Laneshia's trailer. Tommy explained that on the way back to the trailer they saw "[s]ome guy in an SUV." According to Tommy, appellant asked the guy in the SUV "What's up?" and then they continued to the trailer. Tommy testified that about forty-five minutes after they returned to Laneshia's trailer, appellant and Allen left together in his vehicle. Tommy testified they were gone about an hour and when they returned, Allen had some cigarettes. The jury

5

charge instructed the jury that Allen, Jessica, and Tommy were accomplice witnesses and that a conviction could not be held upon their testimony unless it was corroborated by other evidence tending to connect defendant to the crime.

The State also presented non-accomplice evidence. The State played the surveillance video from inside the store premises to the jury. The surveillance video shows appellant in the store with the three alleged accomplices approximately fourteen minutes before the robbery occurred. The surveillance video also captured the robbery.

The Exxon store clerk who was working on the day of the robbery testified that he knows appellant, that appellant comes into the store every day, sometimes twice a day, and that appellant came into the store with Allen and Jessica a few minutes before the robbery took place. The store clerk also testified that the group left the store in a maroon SUV. The clerk further testified that the robber was wearing a hoodie, a "blue color mask" and had a gun. The clerk explained that he could only see the robber's eyes but thought he knew him. The robber left with cash and roughly four packs of Newport cigarettes. The clerk recalled that the robber ran to the right of the store near the post office when he left the store.

Newton County Sheriff's Deputy, Cynthia Hall, also testified at trial. She testified that she viewed the surveillance video from the store cameras on the day

6

of the robbery and the surveillance video showed that appellant came into the store only a few minutes before the robbery. Hall further testified that on the surveillance video, appellant can be seen in the store with a blue bandana hanging from the side of his pants. Hall explained that this was significant because the robber was wearing a blue bandana around his face during the robbery, only minutes later. Through her investigation Hall learned that appellant went to the store in a red SUV and the robber was in a black SUV. Hall explained that in reviewing the surveillance video she observed the red SUV, believed to be Tommy Brown's vehicle, return to the store a few minutes after Allen, Jessica, Tommy, and appellant left. Hall testified that from the outside store video, which was not presented to the jury at trial, she was able to verify that the red SUV that made a pass by the front of the store just before the robbery, had the same license plate number as the SUV appellant had previously come to the store in. Deputy Hall testified at trial that the store clerk later identified Christopher Simmons from a photo line-up as the robber.

## CORROBORATION OF ACCOMPLICE TESTIMONY

Texas Code of Criminal Procedure article 38.14 provides that a defendant cannot be convicted of an offense upon the testimony of an accomplice without other corroborating evidence tending to connect the defendant to the offense. Tex.

7

Code Crim. Proc. Ann. art. 38.14 (West 2005). "When reviewing the sufficiency of non-accomplice evidence under Article 38.14, we decide whether the inculpatory evidence tends to connect the [defendant] to the commission of the offense." *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). "The direct or circumstantial non-accomplice evidence is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense." *Id.*; *see also Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009). No certain quantity of corroborating evidence is required. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). When there are conflicting views of the evidence, we will defer to the fact-finder's resolution of the evidence. *Smith*, 332 S.W.3d at 442.

Appellant argues that the only evidence connecting appellant to the robbery came from the accomplice witnesses. We disagree. The surveillance video from the store on the day of the robbery was admitted into evidence at trial. Deputy Hall identified all the people shown in the surveillance video. The surveillance video shows appellant arriving at the store in what appears to be a red or maroon SUV with Jessica and Tommy approximately fifteen minutes prior to the robbery. The video shows the maroon SUV pull up in front of the store's entrance and Jessica, Tommy, and appellant, who appear to have exited the vehicle, enter the store.

8

Allen is shown entering the store a few minutes later. The surveillance video shows appellant make a purchase, exit the store, and walk back towards the SUV approximately three minutes after he entered. Thus, the surveillance video establishes that appellant exited the store approximately twelve minutes before the robbery.

The video also shows Jessica, Allen, and Tommy all make purchases and exit the store. The maroon SUV pulled away from the store front roughly five minutes after appellant exited the store. Additionally, on the video, what appears to be the same maroon SUV can be seen through the front door of the store, driving slowly by the store front only a few minutes after it initially pulled away, and approximately five minutes before the robbery occurred. Hall testified that she was able to verify that the plates on this vehicle matched the plates of the vehicle that appellant had previously come to the store in. The surveillance video corroborates the accomplice witness testimony regarding the events leading up to the robbery and appellant's presence at the store only minutes before the robbery.

While a defendant's mere presence at the scene of a crime is insufficient to link the defendant to the commission of the crime, a defendant's presence, coupled with other suspicious circumstances, can be sufficient to tend to connect a defendant to the commission of the crime. *Malone*, 253 S.W.3d at 257(quoting

9

*Golden v. State*, 851 S.W.2d 291, 294 (Tex. Crim. App. 1993) and *Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984)). Suspicious circumstances may include the defendant's being in the company of the accomplice near the time of the offense. *Brown*, 672 S.W.2d at 489. Additionally, observations by investigating officers may be sufficient to connect the defendant with the offense. *See Malone*, 253 S.W.3d at 258-59.

The surveillance video shows what appears to be a blue bandana hanging from appellant's pants. Deputy Hall testified that she had the surveillance video broken down into frames and studied the frames. Hall testified that in the video appellant has a blue bandana hanging from the side of his pants, and that the robber also wore a blue bandana over his face during the robbery. The store clerk also testified the robber covered his face with "a blue colored mask." Further, the surveillance video shows a person, Deputy Hall identified as Brandon Diggles. enter the store prior to the robbery, shortly after appellant exited the store. Diggles made a purchase and then exited the store. Diggles was in the store approximately three minutes. Diggles exited the store before Allen and Tommy exited the store. Deputy Hall testified that through her investigation she determined that Diggles was with the robber, Christopher Simmons, at the time of the robbery.

10

The non-accomplice evidence need not directly link appellant to the commission of the crime. *See Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). "'Tendency to connect' rather than rational sufficiency is the standard: the corroborating evidence need not be sufficient by itself to establish guilt." *Id.* We find that the surveillance video, coupled with the testimony of Deputy Hall and the store clerk, tends to connect appellant to the crime and such evidence corroborated the accomplice testimony. *See id.* at 362. We overrule appellant's sole issue on appeal and affirm the judgment of the trial court.

      AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on March 18, 2013
Opinion Delivered May 22, 2013
Do not publish

Before McKeithen, C.J., Gaultney and Kreger, JJ.