

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-22-00090-CR

RICHARD LYNN KEY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 52nd District Court
Coryell County, Texas
Trial Court No. 21-26855

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

After a bench trial in Coryell County,[1] the trial court convicted Richard Lynn Key of possession of more than four grams but less than two hundred grams of a controlled substance with the intent to deliver.[2] During the trial, a confidential informant and an accomplice testified against Key. The trial court sentenced Key to fifty years in the Texas Department of Criminal Justice.

On appeal, Key contends that the evidence supporting his conviction is legally insufficient because there was insufficient evidence to corroborate the testimony of the informant and the accomplice.

Because we find sufficient corroborating evidence, we affirm the trial court's judgment.

I. **Factual Background**

Kevin Sanchez testified that, on April 21, 2021, a deputy with the Coryell County Sheriff's Department (CCSD) stopped his car. During the stop, the deputy discovered that Sanchez was in possession of methamphetamine. Sanchez admitted at trial that he had two prior felony convictions for possession of methamphetamine. The deputies asked him if he would be willing to assist them by being a confidential informant in exchange for "consideration"—be it "dismissal or probation"—of the possession charge. Sanchez agreed.

---

[1]Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We are unaware of any conflict between precedent of the Tenth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d).

Sanchez testified that he told the officers that Richard Key was "an old friend" of his and that he could purchase methamphetamine from Key, as Key was his "steady supplier" of methamphetamine. Late that same day, Sanchez called Key to purchase some methamphetamine, but the drug buy did not occur because Key said, "No."

The next day, April 22, 2021, Key contacted Sanchez, told him that "he had the meth," and arranged to sell him an ounce of methamphetamine, but Sanchez could not remember how much he agreed to pay. Key agreed to sell him the methamphetamine and told Sanchez to meet him in the parking lot of the Tractor Supply in Gatesville, Coryell County, Texas, around lunch time. Key told Sanchez that his girlfriend, Nikki Woods, would also be present for the transaction. After he arranged the transaction, Sanchez called Sergeant John Bowman of the CCSD, his law enforcement "handler," to let him know where and when the transaction would take place. When Sanchez arrived at the Tractor Supply parking lot, he observed that the CCSD was already there, so he left.

Sanchez said that Key found out he had worked with the police and helped to get him arrested. Sanchez testified that Key drove by his shop once and said that "he was going to get [him]." Sanchez admitted he was under the influence of marihuana on the day of trial but stated that it did not interfere with his memory of the events of April 21 and 22. As a result of his cooperation with law enforcement, Sanchez was not prosecuted for possessing methamphetamine on April 21, 2021.

Nikki Woods testified that she was Key's former girlfriend. Woods testified that, on April 22, 2021, Key told to her to go to The Grove, Texas, to meet a man to pick up Key's

methamphetamine. Woods said she was told to text the man to let him know she was on her way and then to meet him at a church. Woods admitted that on the morning of April 22, 2021, she drove, alone, to The Grove, pulled up next to the man's truck, and got out of her vehicle. The man then handed her the methamphetamine, she got back in her car, and she drove to meet Key at Higginbotham's.[3]

When Woods reached Higginbotham's, Key was about to leave and told her to meet him at Tractor Supply. When Woods arrived at Tractor Supply, she observed that Key was already there in his white Ford F-150 truck, so she parked her car, got out, and got into Key's truck. Upon getting into Key's truck, she "threw" the methamphetamine "towards him in the [truck's] console." Woods explained that she was angry at Key because "it was a lot of methamphetamine" and she was not aware that she would be getting that much. Key was "doing something" with the "black box that had all of his stuff in it like his bags, his scales, his drugs, his syringes." A car pulled up next to Key's truck, and Key said that it was probably Sanchez, but it was actually officers of the CCSD. Although she never saw Key actually touch the drugs, she explained that when the officers pulled up, the drugs were in the truck's console and Key was aware that they were there.

Key and Woods were both placed under arrest and charged with possession of methamphetamine with intent to deliver. In addition, the State filed a civil forfeiture action seeking to seize Woods's car because it was used to transport illegal narcotics. Woods testified that in exchange for her truthful testimony, the charge against her would be dismissed and her

---

[3]Woods testified that she and the man exchanged no money.

vehicle would be returned to her. She said that that did not influence her or cause her to alter the truth of her testimony in any way

Woods testified that while Key was in jail, he sent her several letters in which he asked her to "take this charge" because if convicted, she would "just get probation," while he, based on his criminal history, would go to prison. The letters were admitted into evidence. Woods maintained her relationship with Key for the first couple of weeks after Key got out of jail. She said that Key knew Sanchez was the confidential informant that helped set up his arrest and that Key was really angry about it. He told her that he wanted to find Sanchez, and that concerned her because she did not know what Key would do if he found Sanchez.

Justin Archie testified that, in April of 2021, he was a sergeant with the CCSD. Archie confirmed that Sanchez was found in possession of narcotics, that he agreed to become a confidential informant, and that Sanchez told them that he could purchase methamphetamine from Key. Archie had prior knowledge that Key was involved in illegal narcotics.

An initial drug purchase was set up for April 21, 2021, but it "fell through." The next day, Sanchez called Bowman and told him that Key had agreed to sell him some methamphetamine at lunch time in the Tractor Supply parking lot. Bowman informed Archie and his superiors of the planned sting operation. Archie testified that he had a description of Key's vehicle and what he was supposed to be bringing, so the officers went to Tractor Supply. When they arrived, Archie observed Key's white truck pulling into the parking lot, and he saw another vehicle pull up to the truck and a woman, later identified as Woods, get out of the vehicle and get into the truck. The truck matched the description of the vehicle that was

5

supposed to be delivering methamphetamine. Archie identified Key as the driver of the truck, and he pulled his unmarked car in front of the truck. While other officers arrested Key, Archie contacted Woods, ensured that she did not have any weapons, and questioned her about the situation. He said she provided him with information that was corroborated later by further investigation. Archie then placed Woods under arrest.

Key later spoke with Archie on the telephone. A recording of their telephone conversation was admitted into evidence. Archie testified that Key offered to "work off the charges" but that he (Archie) declined because Key had a history of violent crime and law enforcement could not "work people with violent criminal history." Archie testified that, during the recorded call, Key told him that Woods brought the narcotics to him, that Key knew about the delivery, and that he was only there to keep Woods safe when she delivered methamphetamine to Sanchez.

Bowman confirmed the stop and circumstances that led to Sanchez becoming a confidential informant. Bowman testified that Sanchez arranged to purchase methamphetamine from Key, a man known to Bowman as being "very popular in the narcotic world." Bowman had received numerous reports that Key sold narcotics.

Bowman testified that at about 11:00 a.m., on April 22, 2021, Sanchez called him and informed him that Key was ready to sell him some methamphetamine and that Key wanted to meet Sanchez right away in the Tractor Supply parking lot. Sanchez advised Bowman that Key had said that his girlfriend was bringing the narcotics to the parking lot and that Key would be driving a white Ford F-150 truck. Bowman let his superiors know a drug sale was going to

6

happen, and they drove to the Tractor Supply parking lot to intercept the drugs and arrest those involved.

By the time Bowman arrived at the Tractor Supply parking lot, other CCSD units had already arrived, placed Key under arrest, and handcuffed him. Bowman identified himself and told Key that the CCSD was there because "there was going to be a delivery of methamphetamine." Key claimed that the officers lacked probable cause to search his truck, but Bowman advised him that he did have sufficient cause to search. Bowman asked Lieutenant Mike Gonzales to have his police canine check both Key's truck and Woods's car, and "the dog alerted on both vehicles."

Bowman searched the truck, and in plain view from outside the vehicle, he saw a clear baggie in the truck's center console. He picked the baggie up and "immediately noticed that there was a large quantity of methamphetamine inside that bag."[4] Law enforcement later determined that the baggie contained about 27.81 grams of methamphetamine. During his search, Bowman also found a black box on the floorboard that contained a scale, individual baggies, a small package of methamphetamine, and hypodermic needles. Bowman admitted that he never saw Key touch the baggie of drugs or the black box.

Key told Bowman that Woods had brought the methamphetamine into his truck and that he had no knowledge of it. Woods denied bringing the drugs and claimed to have no knowledge of them. Bowman determined that the "clear [baggie] was sitting right there in plain view," that

---

[4]Key does not dispute that the baggie contained methamphetamine.

it was "within reach of both" Woods and Key, and that "[b]oth parties knew it was there." The recording from Bowman's body camera was admitted into evidence.

On October 20, 2021, Bowman interviewed Woods, and her story of the incident changed "[t]remendously." Woods told Bowman that she wanted to cooperate with the investigation. She stated that Key was in the Tractor Supply parking lot to sell methamphetamine to Sanchez.

The State called five witnesses, admitted nine exhibits, and then rested. Key rested without calling any witnesses. The court found Key guilty of possession of more than four grams but less than two hundred grams of a controlled substance with the intent to deliver and sentenced him to fifty years in prison.

## II.      Corroborating Evidence

In his sole point of error, Key contends that the evidence supporting his conviction is legally insufficient because there was insufficient evidence to corroborate the testimony of Sanchez, a confidential informant, and Woods, an accomplice.[5]

### A.      Standard of Review

Articles 38.14 and 38.141 of the Texas Code of Criminal Procedure provide that a defendant cannot be convicted of a crime based solely on the testimony of an accomplice or confidential informant unless that testimony is "corroborated by other evidence tending to connect the defendant with the offense committed." TEX. CODE CRIM. PROC. ANN. arts. 38.14, 38.141. A challenge to the sufficiency of the corroboration is not the same as a challenge to the sufficiency of the evidence to support the verdict as a whole. *See Cathey v. State*, 992 S.W.2d

---

[5]The State does not dispute that Sanchez was a confidential informant or that Woods was Key's accomplice.

460, 462–63 (Tex. Crim. App. 1999). To corroborate the testimony of a confidential informant or accomplice, all the law requires is that there be some non-confidential-informant or non-accomplice evidence that tends to connect the accused to the commission of the offense. *See Young v. State*, 95 S.W.3d 448, 451 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). In other words, the evidence must simply link the accused in some way to the commission of the crime and show that "rational jurors could conclude that this evidence sufficiently tended to connect [the accused] to the offense." *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (alteration in original) (quoting *Hernandez v. State*, 939 S.W.2d 173, 179 (Tex. Crim. App. 1997)).

"To determine the sufficiency of the corroborative evidence, we eliminate the testimony of the confidential informant [or accomplice] and ask whether other inculpatory evidence tends to connect the accused with the commission of the offense." *Young v. State*, 183 S.W.3d 699, 702–03 (Tex. App.—Tyler 2005, pet. ref'd) (citing *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997)). "[T]he tends-to-connect standard does not present a high threshold." *See Cantelon v. State*, 85 S.W.3d 457, 461 (Tex. App.—Austin 2002, no pet.) (quoting *In the Matter of C.M.G.,* 905 S.W.2d 56, 58 (Tex. App.—Austin 1995, no writ)). Evidence showing that the "accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction." *Malone*, 253 S.W.3d at 257 (quoting *Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984)). But "mere presence alone of a

9

defendant at the scene of a crime is insufficient to corroborate accomplice testimony." *Id.* (quoting *Golden v. State*, 851 S.W.2d 291, 294 (Tex. Crim. App. 1993)).

### B. Analysis

Sanchez testified that Key agreed to sell him methamphetamine and that he informed Bowman that the sale was to take place in the parking lot of the Tractor Supply on April 22, 2021, near lunch time. Bowman testified that Key was known to law enforcement as being involved in narcotics.

Woods testified that on the morning of April 22, 2021, Key told her to go to a church in The Grove, Texas, to meet a man who would give her methamphetamine. She did as he instructed and obtained the drugs. Woods testified that Key then told her to meet him in the parking lot of Tractor Supply. When she arrived at Tractor Supply, she got into his truck and threw the baggie of methamphetamine towards Key into the truck's console. She also said that Key had a little black box with him. When law enforcement drove up in an unmarked vehicle, Key told her that it was probably Sanchez.

Even after removing the testimony of Sanchez and Woods from the evidence, there is still ample evidence tending to connect Key to the commission of the crime. Archie testified that he saw Key's white Ford F-150 truck in the Tractor Supply parking lot where the drug sale was supposed to take place and that he saw Woods get out of her car and get into Key's truck.[6] Bowman found a baggie containing more than four grams but less than 200 grams of methamphetamine in the console of Key's truck. The console was in the middle of the truck's

---

[6]"Evidence that appellant was in the company of the accomplice at or near the time or place of a crime is proper corroborating evidence to support a conviction." *Hernandez v. State*, 939 S.W.2d 173, 178 (Tex. Crim. App. 1997).

front seat, well within Key's reach. Bowman also found a black box containing methamphetamine, baggies, scales, and hypodermic needles in Key's truck.[7]

We conclude that rational jurors viewing the foregoing evidence could conclude that the non-accomplice and non-confidential-informant evidence sufficiently tended to connect Key to the offense of possession of methamphetamine with the intent to deliver. *See Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009). Because we determine that the evidence was sufficient to corroborate the testimony of Sanchez and Woods, we overrule this point of error and affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted: March 27, 2023
Date Decided: May 3, 2023

Do Not Publish

---

[7]*See Jeffery v. State*, 169 S.W.3d 439, 447–48 (Tex. App.—Texarkana 2005, pet. ref'd) (scales, a ledger, and other items found in defendant's bedroom provided circumstantial evidence of his intent to deliver).

11